Date signed August 16, 2010



DUNCAN W. KEIR
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Baltimore

| | | |
|---|---|---|
| In Re: | * | |
| THOMAS W. CRAMBLITT | * | Case No.    09-20324DK |
| | * | Chapter    7 |
| | * | |
| Debtor(s) | * | |
| ************************************ | * | |
| HALE, TRAILER, BRAKE & WHEEL, INC. | * | |
| | * | |
| | * | |
| Plaintiff(s) | * | Adversary Proceeding No. |
| vs. | * | 09-00610DK |
| THOMAS W. CRAMBLITT | * | |
| | * | |
| | * | |
| Defendant(s) | * | |

### MEMORANDUM OF DECISION

Thomas Cramblitt (hereinafter Cramblitt) filed a petition under Chapter 7 of the United

States Bankruptcy Code on June 8, 2009.  On September 14, 2009, Hale Trailer, Brake & Wheel,

Inc (hereinafter Hale) timely filed an "Objection to Discharge" commencing this adversary

proceeding.  The document requests a determination that Cramblitt's guaranty obligation to Hale is

not dischargeable pursuant to Section 523(a)(2)(A) of the Bankruptcy Code.[1]  Hale subsequently

---

[1] Hereafter, all code sections refer to the United States Bankruptcy Code found at Title 11 of the United States Code unless otherwise noted.

filed an "Amended Objection to Discharge" reasserting its position under Section 523(a)(2)(A).[2]  A

trial was held on May 12, 2010, after which the court allowed counsel additional time to file

memoranda and took the matter under advisement.

Before the court for consideration is the question of whether the debt owed by Cramblitt to

Hale, is excepted from discharge pursuant to Section 523(a)(2)(A).  That section of the Bankruptcy

Code provides that a debt "for money, property, services, or an extension, renewal, or refinancing of

credit, to the extent obtained by – false pretenses, a false representation, or actual fraud . . ." is not

dischargeable.[3]  11 U.S.C. § 523(a)(2)(A).

From the evidence, this court finds it more probable than not that Cramblitt made his

fraudulent representation with the intent and purpose of deceiving Hale.  *See Grogan v. Garner*, 498

U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed. 755 (1991)(preponderance standard applicable in non-

dischargeability proceedings).  Hale relied upon the Cramblitt's fraudulent representation, and

because of Cramblitt's indirect receipt of the benefits of his fraud, the Plaintiff's debt is determined

non-dischargeable pursuant to Section 523(a)(2)(A).

Cramblitt executed an authorization agreement between Hale and Griffith Transportation by

posing as CEO, with the knowledge and consent of Griffith Transportation.  As a condition of

extending credit under the authorization agreement, Hale required that an officer of Griffith

Transportation guaranty the company's debt.  Cramblitt represented that he was the CEO of Griffith

Transportation on no fewer than six occasions, including on an individual guaranty form, an

authorization agreement for preauthorized payments, and multiple lease agreements and schedule

As.  Cramblitt testified that he made the false representations because he believed that Hale would

---

[2] The document should have been titled "Complaint" and the remedy sought is not a denial of discharge under Section 727.

[3]  Section 727(b) makes Section 523(a)(2) applicable in a Chapter 7 case.

deny Griffith Transportation a line of credit otherwise. *Trial held May 12, 2010.* Cramblitt's action

therefore was designed to cause the action taken by Hale, namely, to extend a line of credit to

Griffith Transportation, without the required guaranty of an officer. Cramblitt's fraud resulted in

the extension of credit and directly led to the harm suffered by Hale.

It was Hale's policy that any company that could not stand alone (*i.e.* had credit sufficient

that it needed no guarantor), must have an officer of the company guaranty the credit of that

company. In an after business-hours meeting at the house of Allen Griffith's mother, Allen Griffith,

Cramblitt, and Linda Hutson, the Hale representative, met and Cramblitt signed the guaranty forms.

Cramblitt testified that at this meeting, he stated that he had always wanted to be a CEO. *Trial held*

*May 12, 2010.* Hale's current credit reviewer, Anthony Mascovito ("Mascovito"), testified that it is

and was the policy for the person reviewing the credit to run reports and indicate on the guaranty

form whether the credit was acceptable. Mascovito also stated that Hale required an officer to sign

the guaranty form because it put the officer's personal credit at stake if the company defaults.

Although there were no markings on the guaranty form introduced into evidence, indicating that

Cramblitt's credit was acceptable, Hale subsequently extended credit to Griffith Transportation in

the form of lease agreements. Griffith Transportation ultimately defaulted on these leases and Hale

incurred damages of $138,755.57 as a result.

Prior to the events that brought this suit, Cramblitt loaned Griffith Transportation $20,000.

At some point, Cramblitt was also on the health insurance of Griffith Transportation. However, at

no point did Hale provide credit, money, or anything else to Cramblitt as a result of this fraud. This

lack of direct personal profit received by Cramblitt from Hale is a pillar of Cramblitt's defense.

In order for a plaintiff to succeed under Section 523(a)(2)(A), it must prove five factors: (1)

the debtor made a false representation, (2) the debtor knew that the representation was false when it

was made, (3) the debtor made the representation with the intention and purpose of deceiving the creditor, (4) the creditor relied on the false representation, and (5) the creditor sustained loss and damage as a proximate result of the representations having been made. *See Woodall v. Wilcoxon Construction, Inc.*, 177 B.R. 517, 520 (1995). The Defendant in this case admits to or does not deny factors (1), (2), and (5). Accordingly, of the five factors, only (3) and (4) are at issue.

Cramblitt presents two defenses. First, Cramblitt claims that Hale did not rely on his statement because they never ran a credit check on him. Second, Cramblitt claims that he never received any direct personal benefit as a result of his actions. Cramblitt testified that Hale's representative was present when Cramblitt said he was CEO, and that he presumed the representative knew that he, Cramblitt, was not the CEO. Cramblitt claims that he made his representation as being CEO jokingly, and combined with the fact that the meeting was held after business hours, Cramblitt presumed the representative knew he was not the CEO. *Trial held May 12, 2010*. However, these claims do not comport with the other evidence presented. In addition to Cramblitt's statement in front of a Hale representative that he had always wanted to be CEO, Cramblitt subsequently executed a number of documents as the CEO of Griffith Transportation. Among those documents is the personal guaranty which forms the basis for Hale's claims. Cramblitt knew, and Hale's representative confirmed to be true, that Hale required an officer of the company to sign the guaranty form.

Cramblitt also had clear motivation to help Griffith Transportation receive credit in the form of lease agreements. Cramblitt had loaned Griffith Transportation $20,000 at this time, which had not been paid back. By his own admission, Cramblitt believed that his signing the guaranty would increase his chances of being paid back. *Trial held May 12, 2010.* At some point in time, Cramblitt was also on Griffith Transportation's insurance plan, the premiums of which were paid out of the

company's revenue stream.  *Trial held May 12, 2010.*  Claims made by Cramblitt that he did not

have the intention to deceive Hale are not persuasive given the formality and the repetition in which

Cramblitt held himself out as CEO and the obvious motivation to see Griffith Transportation

succeed.

Under Section 523(a)(2)(A), a party must prove that he justifiably relied on the debtor's

misrepresentations.  *See Field v. Mans*, 516 U.S. 59, 61, 116 S.Ct. 437, 439 (1995).  This level of

justification is in contrast to the level asserted by Cramblitt of reasonable reliance for claims filed

under Section 523(a)(2)(B) which would require a creditor who relies on a debtor to investigate

further if it is unreasonable for the creditor not to do so.  *See Girard Bank v. Galligher Jr. (In re*

*Galligher, Jr.),* 41 B.R. 410, 412 (Bankr. E.D.Pa. 1984); *Rimal v. Wibisono (In re Wibisono)*, 412

B.R. 747, 757 (Bankr. D. Md 2009)(stating "a plaintiff must show justifiable reliance rather than

reasonable reliance to prevail under § 523(a)(2)(A)").  Under justifiable reliance, "'[a] person is

justified in relying on a representation of fact although he might have ascertained the falsity of the

representation had he made an investigation.'"  *Wibisono,* 412 B.R. at 757 (*quoting* Restatement

(Second) of Torts (1976) § 545A, Comment b).  Justification of a plaintiff's conduct under Section

523(a)(2)(A) relies upon the "characteristics of the particular plaintiff and the circumstances of the

particular case" and does not allow a creditor to blindly rely upon the debtor's statements.  *Id.*  A

plaintiff is "'required to use his senses, and cannot recover if he blindly relies upon a

misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to

make a cursory examination or investigation.  *Field v. Mans*, 516 U.S. at 71, 116 S.Ct. at 444

(*quoting* Restatement (Second) of Torts (1976) § 541A).  A plaintiff cannot rely on the statements

of the defendant if he is "'capable of appreciating its falsity at the time by the use of his senses.'"

*Id.*(*quoting* Restatement (Second) of Torts (1976) § 541A).  This capability to appreciate falsity is

not a strict standard and only requires the plaintiff to recognize something he could have discovered at a cursory glance or something he has actually discovered. *Id.* (*citing* W. Prosser, Law of Torts § 108, p. 718 (4th ed. 1971)).

The facts in this case show that Hale did not fail to make a cursory assessment of the Defendant's representation as CEO, and it has not been shown that Hale actually was aware that Cramblitt was not the CEO. Alan Griffith asked Cramblitt in the presence of a Hale representative what position in the company he wanted, and suggested CEO. Cramblitt responded that he always wanted to be a CEO, and signed the guarantor form as CEO. *Trial held May 12, 2010.* Cramblitt's continuous representation as CEO throughout the relationship between Hale and Griffith Transportation, along with his designation as an authorized signor of Griffith Transportation's bank account, supports Hale's justifiable reliance upon Cramblitt's misrepresentation that he was a CEO.

The Defendant claims that Hale did not actually rely on Cramblitt's statement as CEO because Hale never ran a credit check on him. If Hale's sole reason for having the guaranty form was to have a party who was capable of paying the line of credit in case of default, then Defendant's argument might lead to a finding that Hale did not actually rely on Cramblitt's misrepresentation. However, Cramblitt did not demonstrate that ability to pay was a requirement of Hale for an acceptable guarantor.

Hale's reasoning for requiring a guarantor was not solely for the purpose of having a secondary obligor to pay the line of credit if the company defaulted. Hale required an officer in the company to personally guaranty the line of credit. From this fact the Court draws the reasonable inference that Hale's requirement included the purpose of providing a personal incentive to management of its borrower to pay the obligation. Hale relied on Cramblitt's willingness to put his personal credit at stake for a company of which Hale believed Cramblitt was an officer. After Hale

6

extended credit to Griffith Transportation, Griffith Transportation failed to pay back the line of credit causing Hale to suffer a loss of $138,755.57.  As Hale would not have extended the credit line without Cramblitt's representation, this Court finds that Hale justifiably relied on Cramblitt's representation as CEO to its detriment.

In cases where a plaintiff seeks to except a debt from discharge under Section 523(a)(2)(A), the defendant debtor frequently derives a direct benefit from the fraud committed.  In the instant case, Cramblitt claims that he received no such direct benefit from Hale as a result of his fraud and should therefore receive a discharge of the debt.  Hale's claim presents the question: Should a debtor who defrauds the creditor of a third party, and receives an indirect benefit from the creditor as a result of his action, be allowed a discharge of the resulting debt to the creditor under Section 727?

Defendant grounds his argument upon the opinion of the United States Court of Appeals for the Fourth Circuit in *Nunnery v. Rountree,* 478 F.3d. 215 (2007).  The literal reading of the holding could be interpreted that if a debtor does not benefit from debtor's fraud, Section 523(a)(2) does not form a statutory basis to hold that debtor's indebtedness to creditor arising as a part of the fraudulent transaction can be excepted from a discharge under Section 523(a)(2).  This court would not read the opinion in *Nunnery* quite so restrictively.

In the *Nunnery* case, there was no harm actually proven to have resulted from the debtor's mispresentation.  Although the creditor had obtained a judgement against the debtor for emotional distress damages, the Circuit Court in its opinion observed:  "Neither side disputes the fact that Rountree obtained nothing directly, *or indirectly* from Nunnery as a result of her fraud." *Id.*. at 222 (emphasis added).  No credit was obtained by Nunnery's fraud.  However in the instant case, credit was clearly extended as a result of fraud.  This would appear to align the matter with the holdings in

*Pleasants v. Kendrick,* 219F.3d 372,375 (4th Cir. 2000) and its reliance upon *Cohen v. de la Cruz,*

523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998) which the court in *Nunn*ery distinguished but

(as to *Pleasants)* did not reverse.  As in *Pleasants*, in the case *sub judice* there is no dispute that

credit was obtained by the fraud of Cramblitt.

In addition, unlike in *Nunnery,* Cramblitt made the fraudulent representations for the

purpose of receiving a benefit, and in fact received that benefit albeit that it was indirect.  Cramblitt

wanted his loans repaid and other tangible benefits from Griffith Transportation remaining in

business and generating revenues, such as Cramblitt's inclusion in Griffith Transportations's health

insurance plan. Cramblitt's testimony acknowledged this fact.  Griffith Transportation's opportunity

to use Hale's rental equipment on credit enhanced Cramblitt's economic interest, including the

health insurance and a greater prospect of loan repayment by providing Griffith Transportation

equipment which it used to generate income.  The fact that ultimately Griffith Transportation could

not or did not repay Cramblitt's loan to Griffith Transportation does not destroy the inescapable

conclusion that such benefits did flow to Cramblitt as the result of his fraud.  As stated by the

United States Supreme Court in *Cohen* and quoted by the Court of Appeals in *Nunnery*, "Once it is

established that specific money or property or money has been obtained by fraud, however, 'any

debt' arising therefrom is excepted from discharge." *Nunnery*, 478 F.3d at 222 (citations omitted).

Section 523(a)(2)(A) provides that a debt for credit obtained by fraud is not dischargeable in

a Chapter 7 case.  The language of the statute contains no words requiring that the debtor must have

profited to the extent the debtor may have anticipated when the fraudulent misrepresentation was

made.[4]

---

[4] The Defendant cites *Woodall* in favor of his position that it must be the debtor who receives the benefits of the fraud in a Section 523(a)(2)(A) claim.  Specifically, *Woodall* states that "the Plaintiff . . . must prove that the Debtor obtained money, property or services from the Plaintiff on account of such fraud." *Woodall v. Wilcoxon*, 177 B.R. 517, 523 (Bankr. Md 1995).  This

It is the conclusion of the court that all of the elements required in order for a finding of non-dischargeability of the indebtedness of the debtor to the plaintiff pursuant to the debtor's guaranty have been proven by a preponderance of that evidence.  The debt is not discharged by a discharge entered in the underlying bankruptcy case.  An order conforming to this conclusion shall be entered.

cc:     All Counsel
        All Parties

**End Of Order**

---

court goes on to say that "[m]oney or services must actually come to the debtor because of the false representation." *Id.*.  Taken out of context from the rest of the *Woodall* opinion, these quotes appear to support the conclusion that the debtor has to be the entity who receives the money, property, or services.  The error with this reading is that the issue in *Woodall* was not whether a Section 523(a)(2)(A) claim could be successful if a third party received the benefits of the fraud, but rather whether the fraud caused the extension of money, property, or services.  The active words in the *Woodall* holding were "obtained money, property or services on account of such false representation," just as they are in Section 523(a)(2)(A) and in the holdings of *Pleasants* and *Cohen*.  In *Woodall*, this court used "Plaintiff" as the subject because the plaintiff was the recipient in that case, but the court did not go so far as to say that it must be the plaintiff who directly receives the money, property, or services in all Section 523(a)(2)(A) actions.